Case number 255621 Mueller Brass Company et al. v. David Crompton. Oral argument not to exceed 15 minutes per side. Mr. Leske, you may proceed for the appellant. Good morning. Excuse me. Good morning and may it please the court. My name is Brian Leske. I represent David Crompton. I'd like to reserve three minutes for rebuttal. This court should reverse for three reasons. First, the district court erred when it awarded Mueller $457,000 in attorney's fees on its breach of guarantee claim. Applying the law of the case doctrine, this court should find that the $10 million settlement payment by David Crompton's company Quit Fittings satisfied, fully satisfied, the claimed attorney's fees. If you may recall, the district court, after interpreting the contractual documents, most notably the intercreditor agreement, and applying principles of equities, concluded that the payment must be allocated in the order of priority of secured debt. And the very important thing to keep in mind in this case is that the guarantee here was based on a secured loan by the assets of David Crompton's company. Now, Mueller could have appealed the equitable reallocation to this court, but it did not. And therefore, that ruling, that equitable reallocation, coupled with the fact of Mueller's misallocation of the settlement proceeds out of the order of priority became law of the case. But the court expressly, well, at least implicitly, decided not to do the same thing for attorney's fees. I don't think you can make that conclusion, Your Honor. In the original order, in the original allocation, the district court specifically reserved the issue of attorney's fees for later. And Crompton, in six pages of briefing before this court on the cross motions for summary judgment, laid out the argument why, now that Mueller had made attorney's fees in the receivership an issue, why it should revisit the reallocation or continue the reallocation issue that it began in 2021, and now allocate the payments of the settlement payment in the order of priority to satisfy the attorney's fees. But you would agree that, I mean, the district court, whether you think the district court's analysis was fulsome or not, refused to reallocate because it held your client liable for some $450,000 in attorney's fees. Well, two things I would say. First of all, it is well settled that, although the district court could have had discretion whether or not to reallocate the payment or not, the absence of the exercise of that discretion by any mention of the six pages of argument is in itself an abuse of discretion and an error of law. So had the district court considered the argument and said, I'm not gonna go back and reallocate the payment, we would have a tough time, I concede to you, on appeal. But the district court didn't do that. The district court, in a scant 14-page order after 300 pages of summary judgment briefing with no oral argument, well over a year after the briefing had continued, issued the order. And several of the other issues that Crompton raised to the district court explicitly weren't considered by the district court. So I don't think this is one of those cases where we can just conclude that the district court considered impliedly or otherwise the argument, and then went ahead and denied it. Can we separate out two things? The allocation of fees with respect to the Tennessee litigation and the allocation of fees with respect to the receivership? Yes, that's. Okay, so as to the Tennessee fees, do you agree that the obligation under the guarantee triggered the day Quick Fittings was in default? Do you contest that? No, I, I, I. Just from there, if that is true, was there not an enforcement action to enforce the guarantee, separate and apart from the loan documents and the receivership, that under the terms of the guarantee, your client was obligated to pay fees with respect to the enforcement of the guarantee? Yes, I think there is a very narrow category of fees that would be triggered by the personal guarantee with all the other fees in the case covered by the settlement of payment. And the problem Mueller has on appeal with even that narrow category of fees from when they filed the lawsuit through their misallocation is that they're not a prevailing party. Their only claim in the case was that they wanted to recover their outstanding principal under the loans. Where in the guarantee agreement does it require them to be a prevailing party? Well, under the law applied by the district court under well-settled Tennessee law, and Supreme Court law applying attorney's fees provisions, you need to be a prevailing party, which means you need to get something on the merits of your claim. And you have to materially change your position in one way or the other. Following the district court's motion for judgment on a pleading decision, the only party who had their position changed was Crompton, for the better. The district court found that Mueller owed, I mean, that Crompton owed absolutely nothing on its fee. It granted Crompton's declaratory judgment saying, I owe nothing under this guarantee. But it also had to litigate the counterclaim and spend fees on that, which is in connection with obligations under the guarantee agreement. Yeah, I think you can separate those out because you cannot recover also, you cannot recover attorney's fees on fees on fees litigation. That's a well-settled principle also. The reason why you file the suit has to trigger the prevailing party analysis. And Mueller did not meet that. Why are you conflating prevailing party versus amount of damages? I think the district court clearly said that your client breached because the personal guarantee said that debt was due on demand, and your client didn't pay on demand. So there was a finding of a breach of contract. Yeah, for a very small period of time from when they filed the case to the misallocation, there was a breach though. That breach though was cured by the $10 million settlement payment that Quick Fitting made, which the only reason why the lawsuit didn't end pretty much immediately was three reasons. First, Mueller knew that Quick Fitting's assets at all times vastly exceeded the debt in the first position and the guaranteed load in the second position. That was only $6 million. The assets sold for over $20 million. They knew their guaranteed loan was covered, but they wanted to file suit anyway because they didn't like them, and that's in the record as well. Why do you conflate animus with just trying to recover the full amount of the debt? Yes, I understand. It strikes me as a rational business practice. Yes. If they have a legal right to it. Obviously, if they don't, then they'll lose. That is correct. I was trying to point out though that there was an ulterior motive, but putting that aside, they knew that the assets of Quick Fitting vastly exceeded the amount of the guarantee. Why? Do you think Quick Fitting should be on the hook for attorney's fees that Crompton agreed to pay as part of the personal guarantee? No, we're not trying to, and that's why, Judge Ermendorf, your question was excellent in the beginning and to separate the fees. We're not trying to conflate or mix the fees and the receivership. That's why, why does it make sense, why does it make sense to allocate the 10 million that Quick Fitting paid for a personal obligation that is no responsibility of Quick Fitting? Yeah, so the fees and the receivership were exclusively designed. Both sides. Yes, yes. What about the fees in this case? Yeah, the fees in this case arise under the guarantee, and as I said, our argument there is that there's only a narrow category of fees that would be available, because at every instance, at every juncture of this litigation, from filing the lawsuit when they knew that there was 10 million dollars in assets to pay that guarantee, Crompton moved to dismiss on personal jurisdiction grounds, and he asked for a stay, saying the receivership is gonna settle this entire lawsuit, because my company is worth 20 million dollars, and there's only six million dollars and three million, a couple million in the first position, a couple million in the second position, so that's all gonna be settled. Mueller opposed that and said, no, let's keep on going with this lawsuit, and then when they got the 10 million dollar payment, they could have allocated it properly according to the order of priority. The district had found that that allocation was wrongful. If you look at the record where the district court lists out in a chart on page 19. So the second point, you're just going back to the quick fitting, which we've just said, we don't think quick fitting should be on the hook for attorney's fees for breach of the guarantee. Yes. The first point is that kind of they had a duty to Mitigate their damages.  Yeah. Why wouldn't that? That would certainly be subject to abusive discretion review, and the district court did reduce the attorney's fees by a lump sum of 40% already. The district court did though, did reduce though, but is again, one of the key considerations in looking at the attorney's fees rewards is success on the merits. And part of the district court's consideration in the success of this merits was this idea that they recovered $600,000 in the receivership fees, to which they had absolutely no entitlement. And we pointed out in our brief several times that when the district court was approaching this, she looked at the attorney's fees as not being, as I said, settled and resolved by the quick fitting. It unquestionably was a obligation of quick fitting to pay those attorney fees. They admitted that in their brief. We collect all the instances on page 25 of our brief, where they conceded in the district court. And we show on page 41 of our appellate brief, excuse me, on page 41, they conceded in a footnote over and over again, that it's a quick fitting debt. Do you agree that one way this could have gone about was that upon default, your client immediately covered the antipodes loan amount and then was able to obtain that payment from quick fittings and the receivership proceeding? Yeah, so as soon as they went into receivership, they couldn't make the payment. They made the payment to Mueller as soon as they could. And that was $10 million to settle everything. So they tried, they did the best they could to settle it. And, you know- What I'm trying to get at is, it would have been an appropriate course for Mueller to enforce the guarantee against your client. And then for your client to say, well, that is only contingent upon quick fittings and ability to pay and to kind of become whole again through the receivership proceedings. All of which is to say, it wasn't necessarily nefarious or out of bounds to try to enforce the guarantee against your client. And if that is so, we're back to, he agreed to pay attorney's fees for enforcement efforts under the terms of the guarantee itself. Yeah, all I can say is that when they initially filed, it wasn't a wrongful filing because the guarantee was in place and there was a breach. But that in every instance, every step of the litigation going forward where the litigation could have ended and the attorney's fees could have ended, Mueller did the exact opposite. They pursued him instead. My second argument is on the breach. I see my time is up on the breach of contract. Okay, well, you'll have your time for a cuddle. All right, thank you. We can ask any questions then. Judge Gibbons, Judge Murphy, Judge Hermann Doerfer. Good morning. My name is Aubrey Greer and I along with my law partner, Larry Montgomery of the law firm of Glenclair Brown in Memphis, Tennessee, represent the appellees in the matter before the court today. Respectfully, this court should affirm Judge Lippman's decisions below in whole. I think before diving into merits, I think some of your honor's questions highlight the need to maybe take a step back and just look at how we got to where we're at. Counsel, we're familiar with the background of this. I want to ask you about the receivership settlement agreement. Yes, your honor. I don't understand how that doesn't completely foreclose your entitlement to receivership-based attorney's fees. In the consent order, this is page ID 1065, there's a chart that says, the claimed amount by Mueller-Brass, it includes almost $700,000 in attorney's fees and costs for the receivership proceedings. That's then settled down through the receivership. So how are you then entitled to obtain the exact same fees you settled from Mr. Crompton for the receivership in the Tennessee litigation? Your honor, what I would say to that question is the secured claim that Mueller-Brass made in the receivership was approximately $10.5 million. The receivership, or excuse me, the receiver fought that claim tooth and nail for about a year. Ultimately, Mueller-Brass and the receiver settled for about $9.4 million. That was the payment that was made to Mueller-Brass in or about early June of 2021. Now that $9.4 million is actually less, it's about $400,000 less than the total principal and interest of the loans, exclusive of attorney fees, meaning what Mueller-Brass received was actually about half a million dollars less than what the principal debt actually was. And that's what a settlement is, right? Like you take less than you think you're entitled to because you're not going to get counterclaimed by the receiver. But that doesn't mean that the attorney's fees and costs, which are proffered as part of your original claimed amount, were not included in the reduced amount reflected in the settlement, which was settled in part to avoid accrual of further attorney's fees. Your Honor, one of the key issues in the settlement was that Mueller-Brass, understanding that it had an alternative source of security for one of the loans, they agreed to a reduced settlement with the understanding with the receiver, and this is in the receivership settlement agreement, that Mueller-Brass would be able to pursue Mr. Crompton for things like these other amounts owed on the antipodes loan that weren't covered by the settlement agreement. That was sort of part and parcel, not sort of. But it was part and parcel to their- Quick fittings obligations to pay fees was in the loan documents. Certainly, Your Honor. And the claim was extinguished through the settlement in the receivership as to the loan documents, right? Correct, Your Honor. But I think as Your Honor highlighted in your question to Mr. Leske, the guarantee also creates obligations that are independent, meaning Mr. Crompton didn't just guarantee quick fittings performance under the antipodes loan agreement. He also independently agreed to pay for certain things, he himself. He didn't have the guarantee vis-a-vis him, which was kind of why I tried to separate out the two, but I'll... Well, so you think if you settle with the primary borrower, say it's a $10 million debt, and maybe there's some claims why the debt isn't valid, and then you settle for $8 million, that that does not extinguish the guarantee as well? I mean, that's, I think, maybe what Judge Hermandorfer was getting at, that you basically had this debt, you settled with the borrower, and now you're trying to, in some respects, renege on the settlement agreement by going after claims you've already settled. Your Honor, that's a fair question. And I think under certain circumstances, that might actually be true, but I think that's dependent upon the language of the guarantee, the language of the loan agreement. In fact, there's jurisprudence from this court, in fact, the Wallace Hardware case that my colleague cites in their brief, that talks about this issue, that where the guarantee has specific language that sort of carves some of these things out, that talks about a non-release of the guarantee obligations, even if the creditor settles with the principal debtor, that's okay, that preserves that claim. So that's why it's not extinguished by virtue of the settlement payment, however allocated, whether it was the way Mueller-Brass originally allocated, or the way the district court. You agree the guarantee-based obligation to pay, sorry, this is complicated. The guarantee-based obligation to pay the receivership attorney fees only triggers if quick-fitting does not pay, it's only contingent upon quick-fitting not paying the receivership attorney fees, because that's its initial responsibility under the loan documents. I would say, Your Honor, the way the guarantee is worded is that Mueller-Brass can look to Crompton first and primarily, there's actually specific language in there that says that Mueller-Brass does not have to look to quick-fitting, meaning this is not a typical situation where the guarantee is only triggered if the primary debtor doesn't pay. What the guarantee actually says is that Mueller-Brass can look to Crompton directly, meaning there could have been a situation in this case where Mueller-Brass, understanding it had alternative security for the antipodes loan, simply filed a claim in the receivership for just the J.P. Morgan loan and just the Mueller-Brass working capital loan, proceeded with that in the receivership, being that the receivership was Mueller-Brass' sole avenue to go after quick-fitting, and also, as Mueller-Brass did here, pursue the Tennessee Guarantee Enforcement Action against Mr. Crompton individually. Mueller-Brass could have done that. The fact that the guarantee provides Mueller-Brass the ability to look to Mr. Crompton directly and the fact that the issue of fees, particularly, was part of the settlement agreement, there was this acknowledgement by the receiver that Mueller-Brass was not releasing claims for fees. That was all, again, part of that bargain that Mueller-Brass struck with the receiver. That's why it's appropriate for Mueller-Brass to seek the receivership fees, and as the district court noted, it did a pro-rata reallocation of the fee amount. It simply took the $650,000 fees in the receivership and just cut it into thirds, allocating whatever that was, $217,000, to the antipodes loan. Can I ask you, what was wrong with the argument of your friend on the other side that abuse of discretion review requires the exercise of discretion? And it's not obvious in any of these pleadings that the district court actually confronted this question of whether there should have been a reallocation of the priorities to cover these attorney's fees. So what would be wrong with the idea of just sending it back for an explicit opinion on whether or not these attorney's fees should be allocated second priority as part of the $9 million settlement? Your Honor, what I would say to that is, as my colleague noted, there's been extensive briefing down in the case below, thousands and thousands of pages of motion briefing. But doesn't that suggest that maybe this got lost? That's the reason why I'm concerned. There's no, I mean, can you point to a district court opinion where the district court says it's not appropriate to allocate these attorney's fees to the second priority position and they should be independent for the reasons you have already suggested? I don't see the district court saying that. I don't think the district court explicitly said that. And I think the way that Judge Lippman handled this case in all of her rulings, she was very diligent about addressing the various arguments of the parties. The notion that I think that she just didn't consider this at all, I don't think jibes with anything else that's happened in this case. The other reason is this issue of the reallocation wasn't something that Mr. Crompton affirmatively moved for, said to the district court, your honor, please go ahead and reallocate this. This was an argument that was raised in response to Mueller-Brass's summary judgment motion. So it was almost a don't give them money because it wasn't a please go ahead and do this. So I'm not sure that the district court was really viewing this as an affirmative request from Mr. Crompton, but I don't think there's any doubt that the district court based on the totality of how the court handled this case certainly considered that issue. I'm not sure that for every single issue that's raised in the case, a judge has to say something explicit about it. I think there is this idea that when parties raise arguments and the court makes a ruling based on some of the arguments, but not the others, there has to be an inference that the court considered those arguments. So I don't think it's a point. It puts us in a difficult position because there's nothing for us to review in some respects. Whether there was an abuse of discretion depends on the reasons for the exercise of the discretion. That's what I'm struggling with. And I can appreciate it. Especially for, I mean, we hit a lot about the attorney's fees in this suit, but especially for the attorney's fees in the receivership, it's not obvious why they wanna just be naturally in the second priority position as part of the debt that Quick Fitting had. And, Your Honor, I think also, particularly with respect to the fees, there was, if Your Honors will recall, there was fairly extensive subsequent briefing on the issue of fees. Certainly, Mueller-Brass asked for the fees in both the receivership and the guarantee enforcement action as part of its motion for summary judgment. The district court then requested supplemental briefing on the issue of fees where this was all addressed. And certainly, Mueller-Brass put forward the reasons why it thought it was entitled to the fees in those particular actions. Mr. Crompton chose to focus on other issues, meaning that really didn't challenge that, and the district court made a determination as to those. So I think the district court has spoken on the issue. I think there is enough for the court to review in that respect. So what's the, then what is the best reason for why the fees in the receivership should not be allocated to the antipedist loan? As the district court originally reallocated, and again, in all candor to the court, Mueller-Brass does not agree with the district court's decision to reallocate. We did not appeal it because we just wanted to end the case, to be perfectly honest. But the way the district court reallocated the funds was it went to principal and interest. No, I got that. The actual money. I got that, but what's the logic for why it shouldn't include attorney's fees? Well, for one, Your Honor, they were certainly still, the issue was still being contested, meaning there wasn't really, there wasn't anything necessarily, probably to rule on in that respect at that point. Also, in terms of the motion for judgment on the pleadings, that actually wasn't what Mr. Crompton asked for. The court gave Mr. Crompton what it asked for. Mr. Crompton, in the amendment. But so, yeah, no, this just goes to why there shouldn't have been a second step once the attorney's fees were determined about where those attorney's fees should be allocated in the chain of funds. That's my point. So I agree with you that the district court said that, essentially, didn't the district court essentially say it's premature in its initial order to think about attorney's fees and how to allocate them? I think it used the verbiage, not at issue, or something along those lines. Because it's hard to determine how much the attorney's fees are even gonna be at that point. So why, but then there's no reasoning later about where these attorney's fees should be allocated. That's the concern. And I don't see a justification for why they shouldn't be just with the loan at which your client was trying to collect. And I can appreciate that, Your Honor. I think, again, it's important that the fact that the receivership settlement payment was not enough to satisfy the underlying, the actual loans themselves, before we even get to the collateral issue of attorney's fees. I think the court's view was, in terms of the equitable allocation, that we need to take care of the actual debt obligation first before we get to those other things. I mean, doesn't the settlement, sorry, I don't wanna belabor this, but one last thing on the settlement. Isn't one of the last lines of the settlement that each side agrees to covers its costs and attorney's fees made in connection with this agreement? I'm sorry, could you say that again, Your Honor? The receivership settlement that was actually executed, doesn't it contemplate that each side is going to cover, let's see, this is page ID 1077. Well, I have it at 66-3, page ID 836. Each party shall be responsible for its own costs, including attorney's fees, in connection with this agreement. That's the very end of the settlement agreement. Paragraph 13, Your Honor. That's right. I see that my time, no, I'm sorry, I have one minute. That is in connection with this agreement, meaning if there's a dispute as to the settlement agreement between the receiver and Mueller-Brass about the terms of this agreement, certainly what that provision says is that if Mueller-Brass has to go and sue the receiver because the receiver breached, Mueller-Brass will pay its own fees and vice versa. I don't think that speaks to the issue of the loan debt, the antipodes loan, the guarantee. That's just unique to this agreement. And again, I think that highlights part of the problem of this case is Mr. Crompton has repeatedly attempted to shelter under various contracts to which he is not a party. He's a party to one contract. The language of that contract is the guarantee, it is explicit. There has been a finding that he breached that guarantee and the court made a reasoned determination about the damages. In fact, the district court significantly reduced those damages. I see that my time is up. I would ask your honors to affirm the district court's decisions in all respect. I thank you for your time. I yield to my colleague. Thank you. We will hear a rebuttal. Thank you. Just three points. I believe that this court's decision in Wallace Hardware resolves many of the arguments that my brother here raised. A guarantor is only liable to the same extent as the debtor and any reduction in a debtor's indebtedness, whether through the payment or through settlement, to reduce liability under the guarantee, including a release of claim, has to go to the guarantor. In other words, everything that the debtor pays to the lender, Mueller here, Crompton gets credit for. That includes settlement of claims. Quick fitting had lender liability claims, valuable lender liability claims against Mueller Brass, and they settled those too. Crompton gets credit for those. So there's no question that all of the attorney's fees and the receivership are taken care of. And that makes sense. A personal guarantee only comes into play if the debtor can't pay or doesn't pay. Quick fitting did both. It had plenty of money and it also paid. My second point is, I don't think there is a need to remand on the reallocation issue because I think it's governed by law of the case. There's no law to decide. The court, the district court already apply, interpreted the intercredit agreement. I don't think there's a world in which the district court could have rationally said, I'll allocate the debt, but not the attorney's fees. No, I don't think so. Based on the language in the motion for judgment on the pleadings where she looked at Tennessee law, she looked at Rhode Island law, she looked at principles of equities, and it's undisputed that attorney's fees are quick fitting debt. The district court clearly said that attorney's fees weren't at issue at that point. So it was essentially, the court was reserving it for another day. Yeah, the only reason attorney's fees weren't at issue, at least on the receivership, is because they didn't claim them. They didn't claim the attorney's fees under the receivership until much later in the litigation. After they lost at the motion of judgment stage, they started seeking their attorney's fees in the receivership. That's what happened, and that's why we raised it in opposition to their summary judgment motion. Because they only saw, and you can read their complaint in their prayer for relief, it was only claims in this proceeding. And that's what Judge Lippman said also. She allowed their claims to continue for attorney's fees in this proceeding, in the Tennessee litigation. Only after they lost, they started trying to get money from the receivership. That's why we raised it in opposition. But again, you can look in 3115 to 3120. We have six pages of arguments. This wasn't a cursory saying we shouldn't pay. We took the court through every step of the second reallocation because they conceded that it was a quick-fitting debt, and we had the law of the case on our side. The last point is, this court should reverse the, or should grant Crompton his attorney's fees on the breach of contract because the court already found that the misallocation was a breach. It changed, it subordinated the secure debt. The misallocation is a law of the case doctrine. And if this court looks at the Anchor Motor Freight case, it makes clear that attorney's fees are, are, can be recovered for a breach of contract when they're an essential element. And a covenant not to sue, which is the Anchor Freight, works the same way as a guarantee. A guarantee creates a cause of action, a private right of action against someone who's not otherwise entitled to be sued. And Mueller breached that. And it's the same thing. It's an essential element of Crompton's claim. It's not just an award to him as a successful litigant. That's why it falls into an exception in the American rule. It's one of his elements of the claim. It's the only measure of damages Crompton has in this case is his fees to defend himself against the wrongful misallocation and the wrongful lawsuit. So we would ask that the court reverse that decision as well on the work fees. Thank you very much. Thank you for your excellent advocacy today. The case will be submitted and the clerk can call the next case.